UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Shawn Olson,

             Plaintiff,          **MEMORANDUM OPINION AND ORDER**

v.                             Civil No. 14-1163 ADM/JJK

Push, Inc.,

             Defendant.

___

Mark A. Greenman, Esq., Law Office of Mark A. Greenman, Minneapolis, MN, on behalf of Plaintiff.

Andrew E. Tanick, Esq., and Brian M.W. Cunningham, Esq., Ford & Harrison LLP, Minneapolis, MN, on behalf of Defendant.

___

## I. INTRODUCTION

On June 12, 2014, the undersigned United States District Judge heard oral argument on Defendant Push, Inc.'s ("Push") Motion to Dismiss [Docket No. 5]. Plaintiff Shawn Olson opposes the motion. For the reasons stated herein, Push's motion is granted.

## II. BACKGROUND

On February 18, 2014, Push, a Wisconsin company, offered Olson employment in West Virginia. Not. of Removal [Docket No. 1] Ex. 1 (Compl.) ¶ 1. Olson, a resident of Minnesota, accepted the offer. Id. On February 24, 2014, Push asked Olson to submit to drug testing at a clinic in Wisconsin. At the time of the request, Olson was in Elk River, Minnesota. For convenience reasons, the parties agreed Olson could take the drug test in Elk River. Olson took the drug test and on February 27, 2014, Olson began working for Push in West Virginia. Id. ¶¶ 3-6.

On March 4, 2014, Push informed Olson that his drug test sample was "too diluted."

Push considers a diluted, and thus indeterminate, result to be equal to a positive test result, and thus terminated Olson's employment. See id. ¶ 7.

On March 25, 2014, Olson initiated this action in Hennepin County District Court. See Not. of Removal. Olson alleges Push violated the Minnesota Drug and Alcohol Testing in the Workplace Act ("DATWA") because Push terminated Olson based on an initial test result. Under DATWA, an employer may not terminate or refuse to hire an employee based on an initial screening result unless the employer verifies the result through a confirmatory test. Minn. Stat. § 181.953, subd. 10.

On April 16, 2014, Push removed the action to federal court under 28 U.S.C. § 1332. On April 22, 2014, Push filed the present motion to dismiss.

## III.  DISCUSSION

**A.  Motion to Dismiss Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure states that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. In evaluating such a motion, the court construes the pleadings in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994) (citation omitted). The complaint need not allege facts with "heightened" specificity, but it must include enough facts to move claims "across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Also, the court may not consider matters outside the pleadings in connection

with a Rule 12(b)(6) motion, but "documents necessarily embraced by the complaint are not matters outside the pleading[s]." Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012) (citation omitted).

**B. Minnesota Drug and Alcohol Testing in the Workplace Act ("DATWA")**

Push argues Olson has failed to state a claim for which relief may be granted because DATWA applies only to employment within the state of Minnesota. Minnesota courts, Push argues, have long recognized a presumption against the extra-territorial application of state laws. See Pl.'s Mem. Supp. Mot. Dismiss [Docket No. 10] 3 (citing In re Pratt, 18 N.W.2d 147, 423 (Minn. 1945) ("The laws of one state of their own vigor have no extraterritorial effect.")). Push argues the Minnesota legislature did not intend for DATWA to apply to out-of-state employers hiring for out of state jobs, and that even if the legislature unambiguously intended to apply DATWA to out-of-state employment, the limits of state sovereignty would prevent the statute from having an effect outside of Minnesota's borders.

Push further argues the decision to employ Olson and conduct a drug test occurred outside of Minnesota. Push argues applying DATWA to an employer when "the acts giving rise to the claim" occurred out of state would violate the employer's due process rights. See id. at 4 (citing Landon v. Nw. Airlines, No. 3-93-151, 1995 U.S. Dist. LEXIS 20271, at *25-26 (D. Minn. Jan. 31, 1995), rev'd in part on other grounds, 72 F.3d 620 (8th Cir. 1995)).

Olson's arguments in response focus primarily on DATWA's text. DATWA defines an employee as "a person . . . who performs services for compensation, in whatever form, for an employer." Minn. Stat. § 181.950, subd. 6. "Employer," in turn, is defined as "a person or entity located or doing business in this state and having one or more employees, and includes the state

3

and all political or other governmental subdivisions of the state." Id. § 181.950, subd. 7. By the plain text of the statute, Olson argues, DATWA must apply to Push as a company "doing business in this state," even if the place of Olson's employment was to be exclusively in West Virginia.[1] Olson also argues that he is a Minnesota resident, and that DATWA governs "the testing itself," including requirements for laboratory procedures and standards. See, e.g., Minn. Stat. § 181.953, subd. 3 (requiring drug testing laboratories to retain samples for at least six months). Because he is a Minnesota resident and his testing occurred in Minnesota, Olson argues DATWA must apply.

Minnesota law does impose a presumption against the extra-territorial application of state law. The presumption reflects the long-established recognition of a state's sovereign power to "regulate persons and things within its territory," and that conversely, "[i]t is beyond the power of a state to impose its laws upon another state." In re St. Paul & K.C. Grain Co., 94 N.W. 218, 225 (Minn. 1903); see also North Dakota v. Heydinger, --- F. Supp. 2d ----, No. 11-3232, 2014 WL 1612331, at *15-16 (D. Minn. Apr. 18, 2014) (finding state statute violated dormant Commerce Clause by regulating activity that took place "wholly outside of the state's borders") (citation omitted). The presumption against extra-territoriality also prevents potential conflicts of law that might arise "if one state's statute were to be applied to persons within the borders of another state." Arnold v. Cargill, No. Civ.012086, 2002 WL 1576141, at *2 (D. Minn. July 15, 2002).

Olson's interpretation runs contrary to the presumption against extra-territorial

---

[1] Push concedes that it does business in Minnesota. Def.'s Reply Supp. Mot. Dismiss [Docket No. 15] at 4 n.2.

application. Olson notes that DATWA's definition of "employer" refers only to "doing business," and not to the place of hiring or employment. But this silence is not an invitation to apply DATWA as broadly and in as many states as possible. On the contrary, in the absence of extra-territorial language, DATWA must be interpreted as governing only in-state activity. See Longaker v. Boston Scientific Corp., 872 F. Supp. 2d 816, 819 (D. Minn. 2012) ("A general presumption exists against the extra-territorial application of a state's statutes."), aff'd, 715 F.3d 658 (8th Cir. 2013). DATWA defines employer as an "entity located or doing business in this state." The structure of this phrase makes "located" and "doing business" equal alternatives, suggesting that either the company must be located in Minnesota or its relevant business—namely, the employment for which it is conducting drug testing—is located in the state. It is unreasonable to construe the phrase "doing business in" as a broad, stand-alone qualification that applies to any employer who conducts any amount of business in Minnesota, regardless of where the employment is taking place.

Olson also argues DATWA should apply because he is: (1) a Minnesota citizen who (2) submitted to testing in Minnesota. These arguments are unpersuasive. First, DATWA has no provision that it applies only to Minnesota residents, or that it applies to Minnesota residents regardless of their place of employment. See Pl.'s Opp'n to Mot. Dismiss [Docket No. 11] at 1; see also State v. Heiges, 806 N.W.2d 1, 15 (Minn. 2011) ("In construing statutes, we cannot supply that which the Legislature purposely omits or inadvertently overlooks."). On the contrary, DATWA defines "employee" only in relation to the "employer," without stating a residency requirement. This further implies that the employment, and not the residence of the

employee, is the key consideration.[2] See Minn. Stat. § 181.950, subd. 6. Second, although DATWA specifies certain test standards, it does not state that any employer who uses a Minnesota laboratory for testing is then automatically subject to all of DATWA's requirements. See, e.g., id. § 181.953. The Minnesota legislature had ample opportunity to extend, or at least attempt to extend, the application of DATWA to the use of Minnesota laboratories, but chose not to do so. Interpreting DATWA to apply to the use of Minnesota laboratories for employment decisions occurring outside of Minnesota would "supply [statutory requirements] which the Legislature purposely omits or inadvertently overlooks." Heiges, 806 N.W.2d at 15.

In addition, Olson's extra-territorial interpretation of DATWA does not account for its related provisions. DATWA imposes a series of continuing obligations on employers that could not reasonably be interpreted as applying to out-of-state employment. See Am. Family Ins. Grp. v. Schroedl, 616 N.W.2d 273, 277-78 (Minn. 2000) (holding courts should interpret statutes to "in light of the surrounding sections" and in a way that avoids "absurd results and unjust consequences"). For example, DATWA requires employers to develop a written testing policy which includes certain statute-mandated disclosures and to distribute this policy to all job applicants. The statute also requires employers post notice of the developed policy in a "conspicuous location on the employer's premises." Minn. Stat. §§ 181.951, subd. 1, 181.952, subd. 2. If DATWA was intended to apply to any employer that conducts any amount of business in the state—regardless of where its employees work—these provisions could result in multi-state employers like Push being required to distribute DATWA testing policies to job

---

[2] This interpretation is consistent with Minnesota's authority to regulate conduct within its borders. A non-resident who comes to work in Minnesota would logically be protected by DATWA.

applicants who have no connection whatsoever to Minnesota. Push could also be required to post a Minnesota-specific disclosure in its West Virginia facilities. Although Olson's interpretation of the definition of "employer" might appear facially sound, it invites absurd or unjust results when DATWA's requirements are viewed as a whole.

The regulation of out of state conduct invited by Olson's interpretation also risks rendering DATWA unconstitutional. A state's regulation of commerce beyond its borders risks violating the Commerce Clause, in which the Constitution reserved the power to regulate interstate commerce to Congress alone.[3] U.S. Const. Art. 1, § 3. If every state adopted drug testing statutes as broad as the one Olson envisions, the resulting laws would create numerous conflicts. See Healy v. Beer Inst., Inc., 491 U.S. 324, 336-37 (1989) (holding that in evaluating state law's impact on the Commerce Clause, courts should consider "what effect would arise" if "not one, but many or every, State adopted similar legislation"). Legislation resulting in such conflicts exceeds "the inherent limits of the State's power." Edgar v. MITE Corp., 457 U.S. 624, 643 (1982). Further, and fundamentally, courts must construe a statute to avoid unconstitutionality. State v. Sorenson, 430 N.W.2d 231, 236-37 (Minn. Ct. App. 1988); see also Minn. Stat. § 645.17 (stating "the legislature does not intend to violate the Constitution of the United States"). Olson's broad interpretation of DATWA is thus also rejected because it risks unconstitutionality.

Finally, Push is correct that due process prevents a person or entity from being arbitrarily subjected to Minnesota law. The alleged contacts with Minnesota must be "sufficient to make

---

[3] The inverse implication of the Commerce Clause, that states may not regulate interstate commerce, is sometimes referred to as the dormant Commerce Clause. See Heydinger, 2014 WL 1612331, at *13-15.

application of Minnesota law consistent with due process.  Such contacts must not be too slight and casual."  Hime v. State Farm Fire & Cas. Co., 284 N.W.2d 829, 832 (Minn. 1979); see also Landon, 1995 U.S. Dist. LEXIS 201271, at *25-26.  However, the Court does not reach the issue of due process here because it finds as a matter of law that DATWA did not apply to Olson's prospective employment in West Virginia.

## IV.  CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Push, Inc.'s Motion to Dismiss [Docket No. 5] is **GRANTED**.  All claims in the Complaint [Docket No. 1-1] are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  August 19, 2014.